Mr. Hayes, you have reserved three minutes for rebuttal. Is that correct? That's right, Your Honor. All right. So you may proceed. Good morning. May it please the Court. My name is Benjamin Hayes. On behalf of the petitioner, Mr. Wong. The Board's decision in this case should be reversed if either of the two... You're going to have to keep your voice up a little bit. Oh, I'm sorry. Maybe you can pull those microphones together and then speak into both. Is that somewhat better? Yes. And even this one could come down a little bit. So the Board's decision in this case should be reversed if either of the two offenses that are at issue, the New Jersey disorderly persons offense or the New York forgery offense, did not result in a conviction for a crime involving moral turpitude. And here neither one of them did. The New Jersey disorderly persons offense did not produce a conviction and the New York forgery offense is not one that categorically requires moral turpitude. So I hope to be able to address each of those today. And so I'd like to start, if I could, with the retroactivity issue, which is relevant to the New Jersey offense. So under this Court's cases, whether a Board decision applies retroactively is assessed based on a five-factor analysis. And we take the government to have conceded that the first and fourth factors favor Mr. Wong. And so I think the real crux of the dispute centers around the second factor, which is whether the Board's decision here was a dramatic departure from the prior precedent in Islamazar. And our position is that it was. As the Third Circuit's decision in Castillo and as we understand this Court's remand decision in this same case, those decisions recognized that the precedent in Islamazar set out a multifactored analysis for assessing whether an offense constitutes a conviction. And that required looking at the state law classification for the offense, the collateral consequences that result from having a judgment for that offense, and so on. The Board's decision here, rather than give consideration to those number of offenses, instead threw them out and selected a single factor, and that is the state law procedures, and elevated that to the level of dispositive. Well, that's not quite right, is it? I mean, the analysis should focus, the BIA said, on one, whether the judgment exposes the accused to criminal penalties, and two, whether the procedure used to arrive at that judgment conforms to the minimal constitutional requirements. Now, why is that a dramatic, that two-part test, a dramatic departure? Well, Your Honor, as I understood the conclusion that the BIA drew was, it really was procedures focused. I'm looking at page 525, actually the very end of page 525, where it says instead the analysis should focus on. I'm not seeing that, but I think also on 525 it says, in just sort of the final conclusion before D, we conclude that the minimum constitutional safeguards for all criminal proceedings define whether a proceeding is criminal in nature, and so on. Conversely, the absence of any of these constitutionally required criminal procedures renders a proceeding non-criminal. Right. I mean, you have to both be exposed to criminal penalties, and you have to get minimum constitutional safeguards. And as I understood it, the gist of the opinion focused on the second criteria by explaining what would be the minimum constitutional requirements. The fact that the judgment exposed your client to criminal penalties wasn't really in dispute. I understood he faced up to six months in custody. Correct. So those are the two things that are required for it to be a criminal conviction. You started by saying your argument is this is a dramatic departure. What is a dramatic departure? Because I thought basically what the BIA did was clarify what it would view as the minimum constitutional requirements. So I do recognize that the BIA framed what it was doing as a clarification, but I just don't think that's a correct characterization of what it was doing. What am I missing? Well, because I think Islamazar, right, that's the precedent before this one, right? And so in that case, the board looked to a whole host of other factors, such as the state law classification, the collateral consequences that follow from an offense, and others. And none of those are deemed to be relevant in the board's decision here. I think it says quite explicitly. I know, but is the board's decision here essentially that because criminal procedures are involved, therefore it is a crime? Yes, I think that is the board's position. You dispute that? Or you say that that has not been the subject of prior decisions? What is your relationship? What is your view on that? So our view is that it is not. Those are relevant, certainly relevant, to the question as to whether there is a conviction. But they're so necessary but not sufficient. So I think it is something that the board should look to. We're not saying that they should pay no attention to these considerations. Our point is there are other factors that the board has looked to for nearly two decades. I'm sorry? No, I understand. Another question. Haven't we remanded or haven't other courts remanded to the board in the past in order to get a definitive ruling from the board on the question of what is a crime under state law where the state does not view it as a crime or does not label it as a crime? So the Third Circuit has, yes. It remanded. So two points. One is, yes, short answer yes to your question, both to clarify Islamazar, which we think is different than doing what the board did here, but also I think this is what you're getting at, the question of how an offense that is not a crime under the laws of the governing jurisdiction can nonetheless be a crime for purposes of the INA. That's my question is whether the board has definitively decided that question. I'm not aware of that, no. So the Third Circuit remanded for that. Why isn't that the answer in the sentence before I read to you? How the state defines or labels the offense may be useful, but it's not dispositive. So they're not rejecting consideration of it. It can be useful, but it's not the determinative question. That is the analysis has to focus on the penalties and the procedures. Why isn't that an answer to that question now, a clarification of that? Well, okay. So on that point, I think that I recognize that is what the board said, but I do think there is a difference between just saying that and doing what the board did here, which was to pay no attention whatsoever to the state law classification. When they're articulating their rule, both at the top of right before D and then at. I'm sorry. Are you faulting the board here for not stating completely, not appropriately articulating its analysis to reject the state board, the state classification? In other words, if the board had addressed the state classification that it's not a crime and then had said, okay, that's a factor, but it's not a determinative factor here, the other factors will determine, and that would satisfy that problem. If they gave, if the board's decision said that we actually are going to give consideration, we're not saying the state label is dispositive. Well, they aren't going to give consideration if they address it. I suppose we disagree. Address it and reject it. And did not actually give it consideration. Right. So I think it has to be a relevant factor in the analysis. I think that's the problem. And not just the state law classification itself. I think in Islamazar there are a number of other factors that are at issue. We're not trying to, our position is not that the state label is dispositive. That's not what we're trying to put out. But we do think that is one of many that needs to be considered, and the board's failure to do that is not consistent with the way it should be interpreted. You're saying the court didn't consider it, just because it said it was a slam dunk on the procedures that were afforded the defendant under this statute? Well, I think the basis is it didn't seem to give it any consideration or weight at all. My understanding is from the board's decision it said we will not consider these sorts of things because of the willingness or the desire, rather, to avoid vagaries of state law. Well, what it said is it is not dispositive. You seem to be really to be suggesting that they have to accept the state's terminology and their use of crime or not crime. All the board said is that we don't have to do that. We're going to look at other things, but these other things can be useful. And your view is because they didn't come out the other way, that means they really didn't mean what they said? Well, I guess this probably comes down to a disagreement in how I read the board's decision. But in its conclusion and the paragraph right above D, I take that to be the board laying out what its rule is. And that rule was if there are these minimum constitutional procedures, it is a conviction. If not, it's not. And so it's pretty black and white in that sense. And so that's what I understood the board's rule to be. And I didn't—so I guess at some point it's just a disagreement on— You're already over your time, so I just want to be sure I understand your position on the New York offense. Why isn't this controlled by our decision, recent decision in Vasquez v. Garland? So moral turpitude? Well, I don't believe Vasquez—so Vasquez had two parts, as I understand it. One had to do with retroactivity. The second had to do—addressed only the question of void for vagueness. So I don't believe there was an argument in Vasquez and a holding from this court saying that this was categorically a crime involving moral turpitude. In fact, I think—I may be misremembering, but I think there was in their statement that that wasn't being challenged by the party there. Well, we said that we remain bound by Jordan v. DeGeorge, the Supreme Court case, which said that a crime in which fraud is an ingredient has always been regarded as a crime of moral turpitude. And where there's an element of fraudulent intent, then it's not unconstitutionally vague. Why doesn't that apply here? Because—so that is what DeGeorge says, but the New York statute doesn't—can be violated without fraud. But there's intent to deceive and there's intent to injure. There is an intent to defraud in there, but the statute's broader than that, and that's the point. So it is not categorically— You're at—your position is that it can be committed without an intent to defraud? Yes. Okay. It's disjunctive, intent to— Okay, thank you. All right, thanks very much. You have reserved three minutes for rebuttal. Mr. Hayes, we'll hear from Mr. Zaidi. Am I pronouncing that right? Yes, you are. Good morning, Your Honors, and may it please the Court. Imran Zaidi for the Attorney General. The Court should deny this petition for three reasons. First, the Board's decision here in Matter of Wong is entitled to Chevron deference as a permissible interpretation of the term conviction in the INA. Second, Matter of Wong may be applied retroactively to Petitioner's New Jersey theft offense. And third, Petitioner's separate offense for second-degree forgery in New York is also a crime involving moral turpitude. Now, turning first to the Chevron challenge, Matter of Wong clearly satisfies the Chevron standard of being a reasonable or a permissible policy. Should we wait for the Supreme Court to let us know whether Chevron's still a thing? Your Honor, we can cross that bridge if and when we get there. We don't think you need to wait until that. Chevron certainly applies here. But I'm happy even without Chevron. Well, there'd be a bridge. Pardon me? There'd be a bridge across. You know, wouldn't it make sense to wait? I don't think— It looks like they're going to discuss it. They're going to— There's—I should say there's several bridges that might be crossed there. But I think in the worst-case scenario, even if the court says something to the extent of controverting what Chevron currently holds, it's not at all clear that that would affect immigration purposes or it would be a broader statement against Chevron deference. I'd also say that if this court is concerned about—certainly the court—yes is the short answer. If you guys are concerned about that, then we could wait. I'm happy to address this standard even without Chevron because we don't think that under any standard what the board did here would not be—should not be affirmed by a court. And that's because the simple act of calling a proceeding criminal, if it imposes all of the constitutional protections that the federal constitution requires before imposing criminal penalties, is eminently reasonable under any standard. And that's exactly what the board did here. But you're conceding Chevron's step one, though, right? You're conceding there is—the statute's ambiguous, right? Sure. Conceding. We're happy to say that, Your Honor. I think both parties agree here that we're accepting. Oh, okay. So then what you're urging us to do is sort of come out the same place that the BIA did, right? That's correct, Your Honor. Yes, we are at Chevron's step two. Yes. So it is a— Isn't the fact that there are criminal penalties essential to identifying something as a crime? Because there could be any number of torts in which, you know, you get the opportunity to cross-examine, you get the opportunity to call witnesses. There may not be proof beyond a reasonable doubt. But, I mean, one could envision procedures without—that are akin to criminal procedures without there being a crime. I would think the loss of liberty is the critical factor. Well, Your Honor, I think they're related. For one, in the sort of hypothetical you sort of alleged there, you proposed there, you would need all six of these factors, correct? So even if you have some of the protections but not all, you would then not have a conviction for INA purposes. So you need all six of the protections that Matter of Wong laid out here. And that's why we think the test is eminently reasonable. You would need all of those penalties, all those protections that the federal Constitution requires before imposing criminal penalties. The absence of any one of them, such as, again, in your hypothetical, a burden of proof beyond a reasonable doubt, would mean that it is not a conviction for INA purposes. And just to be clear, those protections are a burden of proof beyond a reasonable doubt, to confront the accused, speedy in public trial, notice of accusations, compulsory process for obtaining favorable witnesses, and a protection against double jeopardy. Again, it is eminently reasonable to say that if all six of those are present, all six of these rights which the federal Constitution requires before imposing criminal penalties, that that is reasonable for this Court to defer to as what is defined as a criminal proceeding. I think it makes sense to get to the retroactivity point where we spent a fair amount of time- Sure. Talking to your adversary. So I guess it seemed to me that what the BIA was saying was that these other factors are still ones that can be considered. But it's not sure how they matter when you have what you described as all the procedures that come with a criminal trial. I think that's right, Judge Sullivan. I think what you're looking at is once you have all six of those, it's dispositive. And that's what the board said here. They also said that if we're speaking about a state label, for instance, that that will still be relevant. But that's what made me ask this question, is you just said you've got to have all six of these things. Correct, Your Honor. Okay, so if you've got five, then it's not a crime. So if you've got all six, it is. If you have only five, it's not. So why do you ever need these other considerations like what the state itself calls it? So what the board said about the state label, for instance, Your Honor, is that it could still be useful to assist immigration adjudicators in understanding the state rights that flow from its characterization, from its label. So to your hypothetical, assume that you have five of the factors, five of the protections, but it's not clear what the sixth is. Say state law is not clear whether as an absolute right you have the right to compulsory process of favorable witnesses. In that circumstance, you could use the state label as a sort of guide to understanding what they mean to do when you're looking for that protection in state law. But I don't disagree. Beyond that, there's not much else beyond those six protections that you are looking for here. It is a clear line. We do not run away from that. It is the type of line that this court was asking for when it remanded this case in 2020. And in this respect, I'd point out we filed a 28-J letter about the Third Circuit's decision in Avila from last month. The Third Circuit had a very similar approach to what this court did in its remand order, which was saying the prior standard was wildly unclear. It seemed that burden of proof beyond a reasonable doubt was a very important factor. But beyond that, we don't know what other factors apply and how they apply. Well, now a matter of long came out. It clarified with, I think, much clarity and uniformity what that standard is. And now the Third Circuit in its decision in Avila said, okay, you've answered our question. You have a test that clearly relies on constitutional protections. And specifically said it established a clear test and one that promotes uniformity. So we think this court should follow that exact example here, particularly where it previously felt the same way about the prior board standard as the Third Circuit had. All right. Well, the Lugo factors, there's five of them. I mean, generally we focus on two and three. And so if this is a new rule that's sort of providing much needed and previously unavailable clarity, does that constitute then an abrupt departure from well-established practice? It doesn't, Your Honor. And it's for the simple reason that the factor you're talking about, so you're right. The second and third factor, we don't disagree that the crux of this test is going to turn on the second and third factors. The second factor is whether it is an abrupt departure from well-established practice or alternatively merely fills the void in an unsettled area of law. And here we believe this test certainly clarifies. We don't resist that sort of classification of this test. But what you certainly did not have here previously was a well-established practice. The very history of this case makes that clear. The 2020 remand order from this court said we do not know what to do with this standard. It seems, again, the burden of proof beyond a reasonable doubt seems to be a very important factor, maybe even dispositive factor, but the Board needs to definitively clarify whether or not it is. And if not, then what other factors come into play? So you did not previously have anything even coming close to a clearly established practice. And that's, I think, the main reason that on the second factor the retroactivity test sort of comes out in the government's favor. But I think, Judge Sullivan, that sort of outcome becomes even more clear when you look at the third factor, and that's the reasonable reliance interest. And they're obviously very related factors because reasonable reliance is based in part on whether it's a departure in the law. But if you look at the reasonable reliance, there's absolutely no circumstance in which Petitioner here could have reasonably relied under the previous standard to assume that his offense would not have been a conviction for immigration purposes. And that's, for one, because of what I just said about how unclear the law had been previously. There was no basis for relying on that unclear law before to say that his crime would not have been a conviction for INA purposes. But even more, whatever indications there were in the law suggested that it would have been a conviction for INA purposes. And that's because, again, the one thing we knew from the prior test, and this is the matter of Islamazar test, is that the burden of proof beyond a reasonable doubt was critical. And perhaps even dispositive. Indeed, again, this Court asked the Board to clarify whether that might be singularly dispositive. And two other circuits had interpreted the prior standard as making that one factor singularly dispositive, the burden of proof beyond a reasonable doubt. And that is present in the New Jersey disorderly person proceedings. Very quickly, Your Honor, as I'm running out of time, just to mention, unless the Court has any other questions about the retroactivity and Chevron deference question, on the question of New York forgery, Judge Radji, we do agree that Peguero-Vazquez resolves this case. There you were looking at a New York forgery crime that was less serious but otherwise identical. That was possession of a forged instrument, but then with the exact same mental states you have here. This is the act of forgery here. So the actual conduct here is the affirmative act of forgery, completing, making, or altering certain written instruments with the intent to deceive, defraud, or injure another. Well, but what matters is that in Vasquez v. Garland, in which the Court was dealing with Penal Law 170.20, the language is with intent to defraud, deceive, or injure, and here 170.10 is forge an instrument with intent to defraud, deceive, or injure. So to the extent, counsel, your adversary is arguing that the deceive or injure creates something other than a fraud crime, that's rejected in Vasquez for a parallel or for identical language. Am I understanding that correctly? I think that's counsel's position. We don't think it was rejected, certainly, but he is right to suggest that that case focused on unconstitutional vagueness and then retroactivity and did not get to the merits of the CIMT determination. And in that respect, we rest on our briefs to very quickly say just you look at both the underlying conduct, which was here itself a forgery and an affirmative act that was dishonest, plus that this is a specific intent crime. If there are no further questions. Thank you, Your Honor. Thank you very much. Mr. Hayes, you've got three minutes for rebuttal. Thank you, Your Honor. Just a few points. So going back to the retroactivity issue, I wanted to address a few points by those in counsel. So if I understood correctly, I think the government agrees with me that the six factors lacking one is the end of the ballgame in the sense that if you don't have all six of these factors, then it is not a conviction full stop, which is what I think the board was trying to do here. On the question of retroactivity, opposing counsel mentioned, or on the conviction question, opposing counsel mentioned. Why is it impossible to say that with all six factors, it's a crime per se? And with five factors, it may be a crime, it may not be a crime. Let's look at what the state does, how the state treats it, what the state calls it. Well, I think that- In other words, it doesn't require every one of them. There may be a procedural safeguard that's of lesser significance or than proof beyond a reasonable doubt or right to confront witnesses, that kind of thing. But it leaves the question open if fewer than six are involved. So if I understand, if six, yes, if not, then we look to all these other factors. That might be a permissible way so long as other factors play in, but I don't think that's what the board is doing here. So in any event, that's not the decision you have before you. It doesn't matter, right? Because all six factors were involved. On that particular issue, yes. But you're talking about retroactivity. So in other words, if this is an abrupt new rule that nobody had any notice of, it came out of nowhere, well, then that would be an argument against retroactivity under factor two. That's your point, right? I think that's right, yes. And so the issue is really, does this constitute an abrupt departure from well-established practice or  You say that this was an unsettled area of law. You would disagree with that? I would disagree with that. So I think two points, a couple points. So it is certainly the case that there were this court and its remand decision, and Castillo noted that there was some lack of clarity with respect to the way that the various factors related to one another. What there was not lack of clarity of, though, was that it was a multifactored analysis. This court's remand decision followed the Third Circuit and I think quite clearly, I mean said very explicitly, the ponderance of the evidence is not dispositive. It's a multifactored approach. So I don't think that part, that issue wasn't multifactored. I think that was quite clearly established. And that is what the board departed from here. And the fact that there was some ambiguity or uncertainty about the particulars of the factors, I think that's irrelevant because that's not the point at which this board decision here departed from the prior precedent in Islamazar. And I think the Third Circuit's decision in Avila is actually quite helpful to us on that. Because there, the Third Circuit went, I mean, its ultimate holding was to, was on the Chevron question. But the Third Circuit went, you know, over its decision in Castillo and then concluded that what the board had done here was to redefine and create a new test and depart from its prior precedent. Now, Avila thought that was okay. But in terms of what it was the board did, I think Avila's characterization is exactly right. And we think that that's ultimately the way the court should decide the case here too. Okay, well thank you both. We will reserve decision.